IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.20-3098

JOSEPH MALDONADO

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
COLORADO and EDWARD LEGER,
individually and as Police Lieutenant with
City and County of Denver Police Department,

      Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiff Joseph Maldonado, by counsel, comes now and avers the following:

## INTRODUCTION

1.      This is a civil rights action by Plaintiff Joseph Maldonado (Maldonado) brought under 42 U.S.C. § 1983 challenging Defendant City and County of Denver, Colorado (Denver) public forum policy and practice that bars expressive activity on public sidewalks and ways in Red Rocks public park except for five (5) remote, out-of-the-way spots Denver designates as public forums.

2.      Maldonado seeks injunctive relief, declaratory relief, and nominal damages against Denver in this cause of action.

1

3.      Denver's public forum policy and practice act and have acted to deprive Maldonado of his fundamental rights, namely, free speech and due process, as acknowledged and articulated in the United States Constitution.

4.      Each and every act of Denver alleged herein was committed by it under the color of state law and authority.

## JURISDICTION AND VENUE

5.      Per 28 U.S.C. §§ 1331 & 1343, this Court has jurisdiction over the instant action, as it raises federal questions on claims brough under the First and Fourteenth Amendments to the United States Constitution and federal statute, 42 U.S.C. § 1983.

6.      By virtue of 28 U.S.C. § 1391(b), this Court is the proper venue for this cause of action, with all claims arising out of the district and all parties residing in the district.

## PARTIES

7.      Maldonado is a resident of Broomfield, Colorado.

8.      Denver is a consolidated city-county located in the State of Colorado.  It owns and controls Red Rocks Mountain Park and manages the park through the Denver Parks and Recreation department.  Denver is also responsible for the management and regulation of the Red Rocks Amphitheater located inside the park, which is conducted through its Arts and Venues Division.

9.      Defendant Edward Leger (Lt. Leger) is a police lieutenant with the City and County of Denver police department.  He has arrest powers under state law.  In his official capacity, Lt. Leger is charged with enforcing City and County of Denver laws, ordinances, and policies, including Denver's public forum policy.

2

## STATEMENT OF FACTS

### *Maldonado's Religious Speech*

10.      Maldonado is a Christian who is compelled by his faith to share the gospel (good news) of Jesus Christ with other people.

11.      His basic message is that Jesus Christ died for sins and anyone who repents of their sins and believes in Him can find salvation.

12.      Maldonado delivers this religious message in a variety of ways.  He hands out written literature containing a Christian message.  He also likes to preach, that is, publicly orate his beliefs.  On occasion he holds up signs setting out Bible verses and other Christian beliefs. And, if given the opportunity, Maldonado engages interested parties in friendly one-on-one or small group conversations.

13.      Depending on the circumstances, Maldonado might employ any one or a combination of these forms of speech.  But he will always preach or hand out literature or hold a sign because these particular methods of communication give Maldonado the opportunity to convey his evangelistic message to individuals who walk past him.

14.      He usually conducts his expressive activities alone or with one or two friends.

15.      Maldonado does not cause congestion with his expressive activity.  He shares in message in open spaces, and leaves plenty of room for people to walk by him.  He does not draw crowds or try to draw a crowd.

16.      Maldonado does not force anyone to listen to him or accept his literature.

17.     He seeks to share the gospel in public forums, like parks and public sidewalks, where he can find members of the general public.

18.     Maldonado especially wants to share the gospel in public places offering a steady stream of people with whom he can address.

### *Red Rocks Mountain Park and Amphitheatre*

19.     Red Rocks park is a mountain park located in Morrison, Colorado, fifteen miles west of Denver.

20.     Denver owns Red Rocks property and maintains it as part of its mountain parks system.

21.     Red Rocks park lies on the eastern slope of the Rocky Mountains and covers approximately 868 acres of property.

22.     The park is open with no cost for entry every day of the year from one hour before sunrise to one hour after sunset, except for the Amphitheatre portion of the park during ticketed events.

23.     Red Rocks park contains a wide variety of rock formations among open spaces and a geologically formed open-air Amphitheater. It also has a series of intersecting streets and sidewalks within the park, along with extensive trails for hiking, walking, and biking.

24.     In addition to the amphitheater, Red Rocks park features the Colorado Music Hall of Fame, a visitor center, a historic trading post, a restaurant, seasonal art exhibits, a picnic shelter, as well as several parking lots and sidewalks throughout the property.

25.      Red Rocks park and the amphitheater attract thousands of visitors each year who wish to explore and see the rock formations, catch a concert in the amphitheater, search for fossils, picnic, hike, bike, walk, run, practice yoga, or engage in some other type of workout in the high elevation of the park.

26.      Red Rocks Amphitheatre is a world-renowned, outdoor facility known for its backdrop scenery and acoustics.  It has served as a venue for concerts and events for more than a over century, regularly hosting musical concerts, musicals, ballets, graduations, weddings, movie screenings, and Easter sunrise services.

### *Denver Public Forum Policy Banning Expressive Activities at Red Rocks Park*

27.      Denver manages and operates the Red Rocks Amphitheatre through the Denver Arts and Venues (formerly Denver Theatres and Arenas) division.

28.      Denver Arts and Venues seeks to enrich and advance Denver's quality of life and economic vitality through premier public venues, arts, cultural and entertainment opportunities.

29.      Arts and Venues oversees five different venues owned by Denver, the McNichols Civic Center Building, the Colorado Convention Center, the Denver Coliseum, and the Denver Performing Arts Complex, in addition to the Red Rocks Amphitheatre.

30.      For these specific venues, including Red Rocks Amphitheatre, Denver created and maintains a public forum policy regulating expressive activity occurring on spaces surrounding the venues.

31.     The policy declares that the public assembly facilities and any associated parking lots, parking garages, and outdoor assembly areas adjacent to the facilities are not public forums for expressive activities by members of the general public.

32.     Professing a recognition of and respect for the need for public expression adjacent to public assembly facilities, Denver identified select spots in areas close to each venue as either traditional public forums or designated public forums.

33.     Denver allows for expression in these isolated spots depicted as public forums on the condition that speakers follow other rules and regulations.  These rules and regulations, among other restrictions, preclude the posting of leaflets as well as speeches, demonstrations, or other acts intending or creating a public forum without express written consent of Denver and any applicable tenant.

34.     In applying this policy to Red Rocks park, Denver goes far beyond the immediate vicinity of the amphitheatre and only allows expressive activities in 5 discrete spots among the 868 acres of the park.

35.     All 5 of the spots in Red Rocks park recognized by Denver as a public forum are places near intersecting public streets.  One is at the entrance to Red Rocks park off of State Highway 93, two are found at the entrances to the park from State Highway 74, one is located at intersection of Red Rocks Park Road and Red Rocks Trail Road, and another is intersection of West Alameda Parkway and Red Rocks Trail Road.

36.     None of the 5 spots Denver designates as public forums in Red Rocks park encounter much pedestrian traffic.

*Denver Enforces Public Forum Policy to Bar Maldonado from Speaking at Red Rocks Park*

37.     Maldonado wants to share his gospel message in spots at Red Rocks park where he can find and reach significant numbers of people, particularly, on the sidewalks bordering the Upper North lot and Top Circle lot that offer a steady flow of pedestrian traffic.

38.     Having visited Red Rocks on many occasions, Maldonado is well familiar with the Red Rocks park and its amphitheatre.  He is aware the entire park is generally free and open to the public during daylight hours and the sidewalks where he wants to speak are open to public at all times.

39.     The Upper North lot and Top Circle lot are in close proximity to each other and connected by a staircase leading up from Upper North lot sidewalk to Top Circle lot.  Both lots are popular with the public because they are generally close to sites-seeing areas and hiking trails. One trail, the Geologic Overlook trail leads to the picnic shelter.  Also, the Top Circle lot is one of the highest altitude parts of the park and boasts some of the best views in the park.

40.     The Upper North lot and Top Circle lot are also popular for parking for events occurring at the Red Rocks Amphitheatre.

41.     The Upper North lot and Top Circle lot enjoy significant pedestrian traffic, especially on days of amphitheatre events.

42.     Maldonado has stood on these Red Rocks park sidewalks on multiple occasions and shared the gospel before events began at the amphitheatre, largely without incident.

43.     On his first visit to Red Rocks park sidewalks to share the gospel, Denver police officers informed Maldonado of a law prohibiting amplification but indicated to him that other

forms of speech were lawful.  Following this exchange, Maldonado was able to convey an unamplified message through various means on his sought-after sidewalks without interference.

44.      He looked forward to conducting his customary expressive activity on the Red Rocks park sidewalks on April 18, 2019, when Snoop Dogg was scheduled to have a concert at the amphitheatre that evening.

45.      Maldonado arrived at around 5:00 p.m. that day, along with a couple of friends, Adam Lacroix and Kerrigan Skelly.  They went to the sidewalk bordering the Top Circle lot, where Maldonado spoke with by-standers and held up a sign, peacefully conveying the gospel message.

46.      From where he was standing on the sidewalk, Maldonado was out of the way of pedestrian traffic flow and able to address people as they walked on another sidewalk leading to the amphitheatre.  He stood well outside the barricades that separated the amphitheatre from the rest of the park.

47.      But before he could get much of his message out, Red Rocks park staff and Denver police officer Lt. Leger, along with other police officers and an event staff manager, approached Maldonado and his friends.

48.      Lt, Leger asked Maldonado and Lacroix how they were doing and informed that they needed to leave the area.

49.      The police officer advised that the City Attorney's office for the City and County of Denver established public forum areas under a public forum policy and Maldonado was not in one of the recognized forums.

50.     Maldonado was surprised by the officer's stance and asked when Denver set aside specific spots for speech.  Lt. Leger indicated a change had been made recently.

51.     The event staff manager, Mr. Juergens, walked over to Maldonado and showed him a map showing the 5 spots where speech is allowed in Red Rocks park.  Lt. Leger stressed that the City Attorney said Maldonado and friends can speak in those spots and those spots only.

52.     Maldonado looked at the map and noticed the designated spots.  He recognized the location of all 5 spots due to his familiarity with Red Rocks park and knew none of the spots would work well for his speech.

53.     Maldonado realized the 5 spots were poor venues for speech activity because hardly anyone is in those areas.

54.     Troubled by the directive, Maldonado reminded Lt. Leger that Red Rocks park is a public park and the police officer acknowledged this reality.

55.     Maldonado objected to the move. He reasoned that the policy should not supersede the U.S. Constitution.

56.     One of Maldonado's friends, Lacroix, asked to look at the policy limiting speech to 5 spots in the park.  Mr. Juergens handed him a map and informed the policy is also on the Red Rocks park website.

57.     Lt. Leger walked away to retrieve the policy. He came back a few minutes later, and asked for an email address, so they could email the rules to them.  Lacroix provided his email address and he soon received the policy from Mr. Jeurgens.

58.     Maldonado asked Lt. Leger about any restrictions in the 5 spots and the officer remarked that he was unsure, suggesting park rangers would be better able to answer that question.

59.     Maldonado also brought up the fact that many people use the sidewalks without going to the event.  Lt. Leger did not respond to this observation.  Instead, he reiterated that First Amendment activities in Red Rocks park are limited to the 5 specific spots designated by Denver.

60.     Lacroix contended the policy did not make much sense because it seemed to address facilities and they were applying the policy to a park.  But Lt. Leger said he was not going to argue the point.

61.     Lt. Leger suggested that Maldonado and company bring their concerns to the city attorney. He then asked the group whether they were willing to go to one of the designated spots.

62.     Lacroix complained about the policy because it deprived them of an audience.  The officer warned that he would cite them for refusing to move to a designated area.

63.     Lt. Leger gave them the map.  He added that the policy was written by City Attorney's office, setting up designated areas for speech, and if they had an issue with it, they could take it up with the City attorney, but they were required to go to one of the designated areas to continue with their speech.

64.     Lacroix asked what would happen to them if they refused to leave and continued to express their beliefs.  Lt. Leger answered that he would pursue a trespass charge against them.

65.     Another one of Maldonado's friends, Kerrigan Skelly, asked how that could happen since they were on public property.  The officer indicated that he could take the issue to the court if he had concerns.

66.     When Skelly said he did not want to take the matter to court Lt. Leger responded that they could issue him a ticket where he would have to go to court.

67.     Skelly pointed out that he was there to share the gospel and the officer was forcing him to go to a spot where no one was around, undermining his purpose for being there.

68.     Lt. Leger answered that it was not him, but Denver, that designated the speech areas.

69.     Skelly inquired how the police officer could enforce an unconstitutional policy.  Lt. Leger, again, invited him to take the issue to court.

70.      Skelly indicated he did not want to bring a lawsuit, he just wanted the freedom to share his beliefs in a public park.  But the officer repeated that park management was asking them to leave the area and go to a designated spot to speak.

71.     Lt. Leger elaborated that Red Rocks park is owned by the city and he would issue a ticket for failure to leave the area.

72.     Maldonado and friends considered their plight.  They did not want to leave where they were and give up an audience.  Maldonado knew that any attempt to speak in any one of the 5 spots would be futile since hardly anyone would be there to receive his message.

73.     Maldonado did not want to receive a ticket or some other criminal sanction for staying and neither did his friends.  Considering the alternatives, Maldonado, along with his friends, abandoned their message and left Red Rocks park entirely.

***Maldonado Attempts to Resolve his Concerns Without Litigation***

11

74.     Maldonado wanted to go back to Red Rocks park and share his message, but he realized any attempt to speak in any of the 5 designated forums would be futile. He wanted to go back to the sidewalks bordering Upper North lot and Top Circle lot.

75.     Later that summer of 2019, Maldonado called Denver's "help center" city services department (311) to determine if he could avoid the policy somehow.  Maldonado explained to 311 operator that he recently learned about the policy setting out designated speech zones in Red Rocks park and wanted to see if it was still binding.

76.     The 311 dispatcher advised that she did not know about the policy and recommended to Maldonado that he contact City Attorney's office concerning the matter.

77.     Subsequently, in September 2019, Maldonado's wife, Michelle Medina, called Denver City Attorney's office to inquire about the policy.

78.     Several days later, on Friday, September 13, 2019, Marley Bordovsky, director of prosecution for Denver City Attorney's office, returned her call.  Ms. Bordovsky asked Medina to forward a copy of the policy to her by email and Medina agreed to do so.

79.     On September 16, 2019, Medina emailed Bordovsky, providing an attachment of the policy that Maldonado reviewed at the scene.  Medina asked in the email whether the policy was official law and how Denver could maintain a policy that contradicted First Amendment protections, asking Bordovsky to call her back with answers to these questions.

80.     Medina did not hear back from Bordovsky.  But, on the following day, September 17, 2019, Tad Bowman, Venue Director for Red Rocks Amphitheatre, emailed Medina in response to her inquiry.

81.     Bowman did not offer any relief or explanation of the policy.  He just opined that the guidelines are constitutionally valid.

82.     Medina shared the emails and import of her discussions with Maldonado. Maldonado was discouraged by the response and nearly lost hope of ever speaking at Red Rocks park again.

83.     But, in the Spring of 2020, Maldonado spoke with a friend who encouraged him to pursue legal recourse to regain his constitutional rights at Red Rocks park.

84.     Still desiring to return to Red Rocks park and share his religious views to pedestrians there, Maldonado sought out and retained legal counsel to pursue a resolution on his behalf.

85.     On June 1, 2020, counsel sent a letter to the mayor, chief of police, and city attorney of Denver, seeking relief from the policy and its ongoing ban on Maldonado's expression.

86.     In the letter, Maldonado's counsel recited the events that transpired on April 18, 2019 (mistakenly indicating April 20), with Lt. Leger stopping Maldonado from engaging in any form of religious speech on the sidewalks in Red Rocks park, explaining why the policy banishing his speech to remote areas of the park violated Maldonado's constitutional rights.

87.     Maldonado did not ask for money damages with this letter.  He sought written assurance from Denver that it would refrain from applying the policy to shut down his peaceful speech in traditional public forums of Red Rocks park again.

88.     Denver replied to this plea on July 7, 2020 through a letter from its Senior Assistant City Attorney.  In this letter, Denver rejected Maldonado's request.

13

89.     Denver contended that no portion of Red Rocks park is a traditional public forum and only the spots that Denver specifically designated are appropriate for Maldonado's First Amendment activities.

90.     Concluding that the policy is constitutional, Denver insisted Maldonado comply with the policy and speak in one of the 5 spots to carry out his speech in Red Rocks park.

91.     Maldonado has not come back to Red Rocks park since the incident in April 2019, missing numerous opportunities to share his gospel message.

### *Maldonado Estopped from Speaking on Public Sidewalks in Red Rocks Park*

92.     Denver maintains policy that limits First Amendment activities to 5 isolated, out-of-the-way spots in Red Rocks park and banishes these activities in all other portions of the park.

93.     In applying this policy, Denver prohibits Maldonado from engaging in any form of religious expression, whether it be public oration, holding a sign, handing out literature, or engaging in conversation, on sidewalks bordering the Upper North lot or Top Circle lot.

94.     Maldonado retains a strong desire to return to the public sidewalks in Red Rocks park and share his religious message, particularly on days when events are occurring in the Red Rocks Amphitheatre.  However, the fear of criminal sanction and arrest deters him from attempting to do so.

95.     The adverse impact on Maldonado's expression, keeping him from exercising his constitutional rights, constitutes irreparable harm to Maldonado.

96.     Maldonado has no adequate remedy at law for the loss of his constitutional rights.

## FIRST CAUSE OF ACTION: FREE SPEECH

97.     Maldonado's religious expression is protected speech under the First Amendment.

98.     Defendants' policies and practices, and the enforcement thereof, including, but not limited to Denver's public forum policy banishing protected expression in all areas of Red Rocks park except for 5 isolated spots:

     a.    are vague and overbroad;

     b.    discriminate against speech because of its content;

     c.    restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

     d.    chill the free speech of Maldonado and third-party citizens;

     e.    are arbitrary and allow for the exercise of unbridled discretion;

     f.    create a content-based heckler's veto;

     g.    do not advance a significant government interest;

     h.    are not narrowly tailored;

     i.    fail to leave open alternative avenues for expression; and

     j.    are unreasonable restrictions on protected speech.

99.     Defendants have no justifiable reason for censoring Maldonado's religious expression in public parks and sidewalks.

100.     Defendants' policies and practices, and the enforcement thereof, including Denver's public forum policy in Red Rocks park, thus violate the Free Speech Clause of the First

Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

WHEREFORE, Maldonado respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION: DUE PROCESS

101.    Defendants' policies and practices, including Denver's public forum policy in Red Rocks park, ban disfavored speech on public property, and the resultant ban on Maldonado's religious speech is vague and lacks sufficient objective standards to curtail the discretion of public officials.  This policy and practice give Defendants an opportunity to enforce the policies in an *ad hoc*, arbitrary, and discriminatory manner.

102.    Defendants cannot justify their vague policies and practices.

103.    The policies and practices, and Defendants' enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Maldonado respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Maldonado respectfully prays for relief in that this Court:

A.    Assume jurisdiction over this action;

B.    Enter a judgment and decree declaring that the actions taken by Defendants in barring Maldonado from sharing his religious viewpoints on a public sidewalk in Red Rocks park on April 18, 2019 violated Maldonado's constitutional rights, namely, his right to free speech and

16

due process.

C. Enter a judgment and decree declaring Denver's public forum policy in Red Rocks park and practice of banning expression taking place on public sidewalks and other public areas in Red Rocks park is unconstitutional on its face and as applied to Maldonado's religious speech activities because it violates his rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D. Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Denver's public forum policy in Red Rocks park and practice of banning expression taking place on public sidewalks and other public areas in Red Rocks park;

E. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

F. That this Court award Maldonado on nominal damages in the amount of $1.00 arising from the acts of Defendants as an important vindication of his constitutional rights;

G. That this Court award Denton his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H. Grant such other and further relief as appears to this Court to be equitable and just.

Respectfully submitted,

s/ Nathan W. Kellum_____
NATHAN W. KELLUM
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
Telephone: (901) 684-5485
Fax: (901) 684-5499
Email: nkellum@crelaw.org
Attorney for Plaintiff Joseph Maldonado

## VERIFICATION OF COMPLAINT

I, Joseph Maldonado, a citizen of the United States and a resident of Broomfield, Colorado, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

s/ Joseph Maldonado_____
JOSEPH MALDONADO