

CENTER FOR RELIGIOUS EXPRESSION

June 1, 2020

| Michael B. Hancock, Mayor<br>**VIA U.S. Mail and Email**<br>**Michael.Hancock@denvergov.org**<br>Mayor's Office<br>1437 N. Bannock St., Room 350<br>Denver, CO 80202 | Paul M. Pazen, Chief of Police<br>**VIA U.S. Mail and Email**<br>**Paul.Pazen@denvergov.org**<br>Police Administration Building<br>1331 Cherokee Street<br>Denver, CO 80204 |
|---|---|
| Kristin M. Bronson, Esq., City Attorney<br>**VIA U.S. Mail and Email**<br>**Kristin.Bronson@denvergov.org**<br>City Attorney's Office<br>201 W. Colfax, Dept. 1108<br>Denver, CO 80202 | |

Re:   Unconstitutional Speech Restriction in Denver

Dear Mayor Hancock, Chief Pazen, and Mrs. Bronson:

Please know Joseph Maldonado contacted Center for Religious Expression (CRE) about a City and County of Denver policy that prohibits him from sharing his religious beliefs in open public areas of Red Rocks Park where he has reasonable access to people.

On April 20, 2019, Maldonado, accompanied by two friends, went to Red Rocks park to share his faith with people. He and his friends stood on a wide sidewalk area, held signs, and took turns orally conveying a religious message with their natural voices. He also would have welcomed opportunity to converse with people and hand them literature with a religious message. At no time did they attempt to enter the amphitheatre or any other area that was closed to public pedestrian access. Nor did they impede the flow of traffic or cause any other problems.

Yet, they were soon stopped by Lieutenant Edward Leger with the Denver Police Department, along with a few other police officers and a representative of the Red Rocks Park management. Lt. Leger explained that the City of Denver had adopted a new policy for Red Rocks Park that prohibits expressive activities from occurring anywhere in the park except for a handful of designated locations each of which is located thousands of feet from pedestrian traffic. Lt. Leger warned that, as a result of the policy, Maldonado and his friends must leave immediately or face

Exhibit "AA"

Page 2
June 1, 2020

citation and arrest for criminal trespass. Maldonado and his friends objected to the ouster, pointing out that the designated areas were far from any people, but Lt. Leger advised there was nothing he could do about it, as it was City policy. Fearing arrest, Maldonado and his friends left.

Maldonado wants to return to Red Rocks Park to peacefully share his faith in publicly-accessible areas. He sends this letter, through counsel, hoping to obtain relief from Denver's policy without resorting to litigation.

## LEGAL ANALYSIS

### MALDONADO'S SPEECH IS PROTECTED

Maldonado wants to convey his religious message through various constitutionally-protected methods. Speech on religious topics receives full constitutional safeguarding. *Capitol Square Review and Advisory Board v. Pinette*, 515 U.S. 753, 760 (1995). Both oral and written means of communicating religious views are protected. *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981) (oral dissemination of religious views). Oration of religious sentiments is a protected means of communication. *Edwards v. South Carolina*, 372 U.S. 229 (1963) ("religious harangue" protected). Likewise, "signs are a form of expression protected by the Free Speech Clause." *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). And, conversations and literature distribution are entitled to the utmost constitutional protection. *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016). Maldonado's desired speech is fully protected.

### RED ROCKS PARK IS A TRADITIONAL PUBLIC FORUM

The level of scrutiny applied to a given speech restriction turns on the nature location at issue. *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (citation omitted). Public parks are "quintessential public forums." *Eagon Through Eagon v. City of Elk City, Okl.*, 72 F.3d 1480, 1486 (10th Cir. 1996) (quotation marks omitted). The long tradition of public parks as venues for free expression of ideas has placed them beyond government authority to close to speech. *See Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998) ("[T]raditional public fora are open for expressive activity regardless of the government's intent."). As a public park owned and operated by City of Denver, Red Rocks Park falls squarely in the archetype of a traditional public forum.

As such, Denver "may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums." *United States v. Grace*, 461 U.S. 171, 180 (1983). Denver cannot eliminate the traditional public forum status of the park by declaring it to be nonpublic. *See id.* at 180 (holding Act of Congress declaring sidewalk around Supreme Court to be nonpublic

Page 3
June 1, 2020

forum could not make it so). Neither does the mere fact that the Amphitheatre within the park is occasionally used for private events alter the traditional public forum status of the rest of the park. A traditional public forum "will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression." *Id. Cf. Eagon*, 72 F.3d at 1485-87 (presence of festival within park did not alter park's traditional public forum status).

The traditional public forum status of Red Rocks Park is significant. The government's ability to regulate speech in such places is "very limited." *United States v. Grace*, 461 U.S. 171, 177 (1983).

## DENVER'S POLICY DELEGATING SPEECH TO A FEW REMOTE AREAS IS UNCOSNTITUTIONAL

No restriction on speech in traditional public fora can be justified unless it is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication. *Eagon*, 72 F.3d at 1487. Denver's banishment of speech fails this test.

A restriction that "burden[s] substantially more speech than is necessary to further the government's legitimate interests" is not narrowly tailored. *Verlo*, 820 F.3d at 1135 (citation omitted). *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1133 (10th Cir. 2012) (the government bears the burden of justifying a speech restriction). A total ban on all expressive activities throughout the vast majority of a wide open public park is plainly not narrowly tailored to whatever interest Denver could conceivably have. *Verlo*, 667 F.3d at 1137 (ban on expressive activity in portions of plaza in immediate vicinity of courthouse held not narrowly tailored to protect ingress/egress and public safety). Indeed, such an absolute ban cannot even be deemed reasonable in a nonpublic forum "because no conceivable governmental interest would justify such an absolute prohibition of speech." *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (invalidating ban on First Amendment activities in an airport terminal). Indeed, the effective ban on literature distribution is sufficient on its own to invalidate the scheme. *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 690 (1992) (ban on literature distribution invalidated as unable to satisfy the lower reasonableness standard applicable to nonpublic forum airport terminal). The harmlessness of Maldonado's desired expression highlights the utter lack of tailoring of Denver's policy. He stands out of the way of pedestrian traffic, orally talks to people in a reasonable tone with his natural voice, displays a sign, engages in close conversation, and hands out literature. Such activity is completely harmless, and does not threaten congestion or in any other way interfere with anything occurring inside or outside the Amphitheatre. The pedestrian public has

Page 4
June 1, 2020

free access to the park at large, so no reason can justify banishing every form of Maldonado's speech to remote locations.

Neither does the banishment of Maldonado's speech leave ample alternative channels for communication. The right to free speech requires opportunity for the speaker to win the attention of his desired audience and convey his desired message. *Heffron*, 452 U.S. at 655; *see Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 866 (9th Cir. 2001). Denver's policy exiles every form of Maldonado's speech to one of a handful of spots thousands of feet from where pedestrians are. In those remote areas, Maldonado has no reasonable access to people to convey his message. Deprived of access to pedestrians, he has no opportunity to hand out literature or engage in conversation. Nor does he have any real opportunity for his oral message to be heard, much less understood and considered. At most, he can only hope that the occasional passing car might be able to read his sign. Effectively shutting down his message, the policy leaves him no real (much less ample) alternatives.

## DEMAND

Maldonado's expression does not cause any harm, and thus there is no justification for banishing it thousands of feet away in Red Rocks Park. Denver's policy violates his rights. Maldonado wishes to return to Red Rocks Parks to share his faith during upcoming events. We therefore respectfully request that you provide written assurance – <u>no later than two weeks from the date of this letter</u> – that Denver will no longer enforce its policy to banish Maldonado's harmless expression to remote areas of the park. If we do not hear from you by this date, we can only assume Denver intends to continue enforcing its unconstitutional policy, leaving Maldonado no option but to consider legal redress.

Sincerely yours,

Nathan W. Kellum

NWK/mam

cc: Joseph Maldonado