IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03098-RBJ

JOSEPH MALDONADO,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
EDWARD LEGER, Individually and as Police Lieutenant with City and County
of Denver Police Department

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT

Defendants City and County of Denver ("Denver") and Edward Leger, through undersigned counsel, submit the following Motion to Dismiss Plaintiff's Verified Complaint (the "Complaint") [Doc. #1] pursuant to Fed. R. Civ. P. 12(b)(6) and as grounds therefor states as follows:

### INTRODUCTION

Denver's policy restricting expressive activity at Red Rocks Amphitheatre (the "Amphitheatre") to five designated areas in Red Rocks Park satisfies the requirements of the first amendment and Due Process Clause, and therefore Plaintiff's Complaint asserting claims pursuant to 42 U.S.C. § 1983 against Denver and Denver Police Lieutenant Leger must be dismissed. Plaintiff's first amendment claim is squarely governed by *Hawkins v. City and County of Denver*, 170 F.3d 1281 (10th Cir. 1999), which found a former public sidewalk and street that had been

converted to a performing arts venue in downtown Denver was a nonpublic forum and that Denver's restriction of expressive activity in the area was reasonable and consistent with a legitimate interest in preserving the area for its designated purpose as an arts venue. Just like the regulation at issue in *Hawkins*, Denver's regulation of expressive activity near the Amphitheatre is consistent with Denver's interest in preserving the area as an arts venue and is a reasonable measure to prevent interference with events, to prevent disrupting eventgoers, and to facilitate safe ingress and egress into the venue. Accordingly, Plaintiff fails to state a claim that the policy violates the first amendment, either as-applied or on its face.

In addition, Plaintiff fails to state a claim under the Due Process Clause because the void-for-vagueness doctrine upon which he relies does not apply to the policy, and even if it did, the policy defines the conduct that is prohibited in specific areas with sufficient definiteness that ordinary people can understand which conduct is prohibited.

Finally, Plaintiff fails to state claims against Denver Police Lt. Edward Leger in his individual capacity.[1] The Complaint alleges that Lt. Leger only informed Plaintiff of the policy and told him that it would be enforced, and these actions did not violate Plaintiff's first amendment or due process rights. In addition, the facts alleged do not establish Lt. Leger violated clearly established law. As a result, Lt. Leger is entitled to qualified immunity. For all of these reasons, Plaintiff's claims against Denver and Lt. Leger should be dismissed.

---

[1] The Complaint asserts a claim against Lt. Leger in his official capacity, however, during conferral on this Motion Plaintiff's counsel indicated he would not pursue the official capacity claim. As a result, Defendants do not address that claim in this Motion.

## FACTUAL BACKGROUND

On the evening of April 18, 2019, Plaintiff went to preach the gospel with friends at Red Rocks Park, an 868-acre mountain park owned by Denver that features the Amphitheatre, a world-renowned outdoor concert venue, and hiking trails, a visitor center, a music hall of fame, an historic trading post, seasonal art exhibits, parking lots and accompanying sidewalks. [Doc. # 1, ¶¶ 20-21, 23-24, 26, 44-45]. That evening, a Snoop Dogg concert was taking place in the Amphitheatre, and Plaintiff went to preach on the sidewalk bordering the Top Circle Lot, which is a parking lot in close proximity to the Amphitheatre and to another parking lot, the Upper North Lot. [*Id.*, ¶¶ 39, 44-46]. Plaintiff chose the location because it was a popular parking spot during events in the Amphitheatre and one traversed by a significant number of eventgoers. [*Id.*, ¶¶ 37, 39-41].

Plaintiff claims that while he was preaching, Lt. Leger approached him and told him that he needed to leave the area because Denver had a policy restricting expressive activities to five public forum areas in Red Rocks Park, and he was not in one of those areas. [*Id.*, ¶¶ 47-49]. The policy declares that Denver's arts venues, including the Amphitheatre and any associated parking lots, garage and adjacent outdoor assembly areas, are not public forums for expressive activities by members of the public, and it identifies five areas near park entrances and road intersections as traditional or designated public forums in which the public may engage in expressive activity. [*Id.*, ¶¶ 29-31, 33-35]. Plaintiff was given a copy of the policy and a map showing the five spots. [*Id.*, ¶¶ 51-53, 63]. Plaintiff expressed concern that none of the designated areas had a significant amount of foot traffic that would provide an audience for his message, but Lt. Leger stated that if Plaintiff and his friends refused to leave, they would be cited for trespass. [*Id.*, ¶¶ 62, 64]. Plaintiff and his friends left the area. [*Id.*, ¶ 73].

3

## STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts that, if assumed to be true, state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also documents referred to in the complaint if they are central to the claims and the parties do not dispute their authenticity. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Plaintiff's Complaint refers to Denver's public forum policy and the map that accompanies the policy. [Doc. # 1, ¶¶ 30-36]. The Complaint also makes the policy, and the location of the five designated public forums, central to Plaintiff's claims. [Doc. #1, ¶¶ 98, 100 (basing the first amendment claim on the policy and "isolated" location of the five areas), ¶ 101 (basing Plaintiff's due process claim on the policy). As a result, both the policy and its accompanying map are properly considered in evaluating this Motion under Rule 12(b)(6). *See Smith*, 561 F.3d at 1098.

## ARGUMENT

I.  **Plaintiff Fails to Allege That the Policy Violates the First Amendment Either as Applied or on Its Face**

To establish a violation of the first amendment, Plaintiff must show that the first amendment protects the speech at issue and that the regulation at issue fails to comport with the applicable legal standard. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797-806 (1985). The applicable standard is determined by the nature of the forum at issue, as the

4

government is not required to permit the public to engage in all forms of speech on property it owns. *United States v. Kokinda*, 497 U.S. 720, 725 (1990) (plurality opinion). Rather, "[t]he right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for specific official uses." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995). When government property is considered a public forum, the government may impose reasonable content-neutral time, place and manner restrictions, but may regulate the content of speech only if the regulation is narrowly drawn to achieve a compelling state interest. *Lee*, 505 U.S. at 678. When the government acts as a proprietor to manage its internal operations, rather than a lawmaker with the power to regulate, its regulation of speech on its property is not subject to the heightened scrutiny to which the government's actions as a lawmaker would be subject. *International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). Instead, for property that is a nonpublic forum, regulations governing speech must meet a much more lenient standard, and "are evaluated by analyzing the reasonableness of the restriction in light of the purpose of the forum." *McDonnell v. City and County of Denver*, 878 F.3d 1247, 1254 (10th Cir. 2018). Here, although Plaintiff alleges speech protected by the first amendment, his allegations establish that the subject property is a nonpublic forum and that the policy is reasonable in relation to the forum's purpose.

    **A.    Plaintiff Does Not Allege That the Policy As-Applied Violates the First Amendment**

        **1.    The Subject Area Is a Non-Public Forum**

For his as-applied challenge to the policy, Denver's interest in preserving the forum for its designated uses must be examined in light of the actual or proposed use Plaintiff intends to make of the forum, *Hawkins*, 170 F.3d at 1290, namely engaging in expressive activity during events at

the Amphitheatre in areas of peak pedestrian traffic such as the walkway next to the Top Circle Lot. [Doc. # 1, ¶¶ 37-38, 41].

A property's forum status depends on the purpose for which it has been used historically or by designation. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Traditional public forums are those places by which "long tradition or by government fiat have been devoted to assembly and debate." *Id.* Nonpublic fora consist of government property that "is not by tradition or designation a forum for public communication." *Id.* at 46. In *Hawkins*, the Tenth Circuit found a similar venue was a nonpublic forum, and this holding is dispositive of the forum question in this case.

*Hawkins* addressed a first amendment challenge to Denver's policy restricting expressive activity in the open-air, glass-covered, 600-foot long walkway known as the Galleria at the Denver Performing Arts Complex ("DPAC"). 170 F.3d 1281. The court found that the Galleria was not a traditional public forum because its primary function was to permit ingress and egress from the DPAC, an arts venue, not as a place for assembly and debate. *Id.* at 1286; *see also Lee*, 505 U.S. at 679. In addition, although the Galleria was built on what was formerly a public street that had once been a public forum, the court found that the alteration of the physical characteristics and function of the area was "sufficient[] to remove its status as a traditional public forum." *Id.* at 1287-88.

The court also concluded that the Galleria was not a designated public forum because "Denver has neither in policy nor practice thrown open the Galleria for public expressive activity," but instead adopted a policy prohibiting demonstrations and leafletting in the DPAC. *Id.* at 1288. The court stated, "This policy hardly opens the Galleria up for public assembly and debate,

especially in light of the fact that, in practice, Denver officials have enforced this policy as an absolute ban on leafletting and picketing in the Galleria." *Id.* at 1288. As a result, the court concluded that the Galleria was a nonpublic forum, requiring that the policy as applied to the plaintiffs only be viewpoint-neutral and reasonable in light of the forum's purpose. *Id*.

Just like the Galleria in *Hawkins*, the subject area in this case is outside of an arts venue, Red Rocks Amphitheatre, and serves as the primary access point for eventgoers to the venue. As the Complaint alleges, the Amphitheatre has been used for more than 100 years as a venue for regularly scheduled concerts, musicals, ballets, graduations, weddings, movie screenings and other special events. [Doc. # 1, ¶¶ 26]. It also alleges that the Top Circle and North Lots are used by people attending events, sight-seeing or hiking, with the heaviest use occurring during scheduled events at the Amphitheatre. [*Id.*, ¶¶ 39-41]. In addition, Denver's policy consists of a flat ban on expressive activity such as demonstrations, picketing, and leafleting, at Red Rocks Amphitheatre and Visitor Center and limits such activity to five areas specifically designated as free speech zones. [*See* Public Forum Policy, attached hereto as **Exhibit A**]. Like the policy at issue in *Hawkins*, Denver's policy restricting expressive activity to only five areas of Red Rocks Park "hardly opens the [property] up for public assembly and debate." 170 F.3d at 1288. Under *Hawkins*, the subject area is a nonpublic forum.

The presence of walkways in the area and the fact that the area is called a "park" do not alter this conclusion, as courts applying customary forum analysis have found similar parks and sidewalks to be nonpublic forums. While courts have referred to sidewalks and parks as "quintessential public fora," "[t]he dispositive question is not what the forum is *called*, but what *purpose* it serves, either by tradition or specific designation." *Boardley v. U.S. Dep't of Int.*, 615

7

F.3d 508, 515 (D.C. Cir. 2010) (emphasis in original). "The mere physical characteristics of the property cannot dictate forum analysis." *Kokinda*, 497 U.S. at 727.

In *Kokinda*, the Supreme Court dismissed the notion that courts' description of sidewalks as "quintessential public fora" automatically transforms every sidewalk into a traditional public forum. Rather, the Court explained that "the location and purpose of a sidewalk is critical to determining whether such a sidewalk constitutes a public forum." *Id.* at 729. The Court observed that what makes municipal sidewalks traditional public fora is that they are continually open, uncongested, and serve to facilitate local commerce and neighborhood life. *Id.* In contrast, the sidewalk at issue in *Kokinda* led from a parking area to a post office and "was constructed solely to provide for the passage of individuals engaged in postal business." *Id.* at 727-28. Based on its location and purpose, the Court concluded that the sidewalk was not a traditional public forum. *Id.* at 727.

Like the sidewalk in *Kokinda*, the mere fact that the walkway where Plaintiff was preaching has physical similarity to a sidewalk does not make it a public forum. The walkway leads from parking lots to the Amphitheatre and serves to provide passage to individuals attending events at the venue. [Doc. # 1, ¶¶ 37, 39-41]. Rather than being continually open, uncongested and facilitating neighborhood life or local commerce as does a municipal sidewalk, the walkway serves as an ingress and egress point for individuals attending arts events at the Amphitheatre. The location and purpose of the walkway demonstrate that it is a nonpublic forum. *See Kokinda*, 497 U.S. at 727.

Likewise, the mere fact that the subject area is in Red Rocks Park does not make it a public forum. Although courts have characterized "parks" as quintessential public fora, courts have

8

refused to find that all parks are traditional public fora. *See Boardley*, 615 F.3d at 514-15. Rather, "[w]hat makes park a traditional public forum is not its grass and trees, but that fact that it has 'immemorially been held in trust for the use of the public and, time out of mind, ha[s] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 515 (quoting *Perry*, 460 U.S. at 45)). As the D.C. Circuit explained, "Mount Rushmore does not become a public forum merely by being called a 'national park' any more than it would be transformed into a nonpublic forum if were labeled a 'museum.'" *Id.* at 514-15. Thus, the key inquiry is not whether an area is called a park, it is whether the area has been held open by the government for the purpose of public discourse. *Id.* at 515.

Here, short of alleging that the location is called a park, Plaintiff alleges no facts establishing that Denver intended to hold the area open for public discourse or that it has been used historically for the purpose of assembly, communicating thoughts between citizens, or discussing public questions. Accordingly, the mere label of the area in which the Amphitheatre is located as a "park" fails to establish that it is a public forum. *See Ketcham v. U.S. Nat'l Park Svc.*, No. 16-cv-00017-SWS, 2016 WL 4269037, at *10 (D. Wyo. Feb. 5, 2016) (finding that neither a specific area of Yellowstone National Park nor the park as a whole was a traditional public forum because there was no indication that the area had been traditionally used for public assembly and debate). For these reasons, the subject area is a nonpublic forum.

    2.    **The Regulation of Expressive Activity Is Reasonable in Light of the Purpose of the Amphitheatre**

Because the area is a nonpublic forum, a less stringent standard is applied to evaluate the policy under *Perry* and its progeny. 460 U.S. at 46. Speech restrictions within nonpublic fora do not violate the first amendment provided they are reasonable and are not "effort[s] to suppress

expression merely because public officials oppose the speaker's view." *Ark. Educ. Tele. Comm'n v. Forbes*, 523 U.S. 666, 677-78 (1998) (quoting *Cornelius*, 473 U.S. at 800). "Reasonableness is measured by evaluating the government's interest in 'preserving the property for the use to which it is lawfully dedicated,'" *McDonnell*, 878 F.3d at 1254 (quoting *Lee*, 505 U.S. at 688), and is a "factually-intensive, individualized inquiry" focusing on the nature and purpose of property, *Hawkins*, 170 F.3d at 1289-90. Government regulation of speech within a nonpublic forum "need not be the most reasonable or the only reasonable limitation" to be permissible. *Lee*, 505 U.S. at 683 (quoting *Kokinda*, 497 U.S. at 730).

The policy is reasonable and consistent with Denver's legitimate interest in preserving the Amphitheatre for the use for which it was lawfully intended, namely an arts venue, in light of the actual and proposed use Plaintiff intends to make of the forum. *See Hawkins*, 170 F.3d at 1289-90. The policy applies to all expressive activity, and therefore does not suppress expression based on any opposition to Plaintiff's view. [*See* Exhibit A, at p. 1 ("The City's public assembly facilities, including without limitation any associated parking lots, parking garages and outdoor assembly areas adjacent to the facilities, are reserved for the exclusive use of tenants and their invitees, and therefore the City's public assembly facilities are not public forums for expressive activities by members of the general public.")].

Furthermore, by restricting expressive activity to designated free speech zones, the policy protects against such activity interfering with the events in the open-air Amphitheatre, disrupting the entertainment experience of patrons, impeding the delivery of supplies or medical services, and obstructing congested channels of vehicle and pedestrian traffic. As the Tenth Circuit found in *Hawkins* when examining a similar policy, "allowing groups, including plaintiffs, to leaflet and

express themselves before and after performances invites a host of additional expressive activity at odds with [the venue's] limited purpose as an entertainment venue" and "could seriously disrupt [its] ability … to serve its designated functions." *Hawkins*, 170 F.3d at 1291 (noting that even leafletting could cause people to change direction, engage in debate with the leafletter, and obstruct traffic flow). It is of no consequence that Plaintiff alleges he was not impeding the flow of traffic or otherwise disrupting the event when he preached before the Snoop Dogg concert because "the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Cornelius*, 473 U.S. at 810 (quoted by *Hawkins*, 170 F.3d at 1290). As a result, the policy preventing expressive activity reasonably serves Denver's interest in preserving the Amphitheatre and its adjacent areas for their designated purpose as an arts venue. *See id.* Consequently, the policy does not violate Plaintiff's first amendment rights as applied, and his first claim for relief should be dismissed.

### B. Plaintiff Fails to Allege a Facial First Amendment Challenge to the Policy

Plaintiff also fails to state a claim based on a facial first amendment challenge to the policy. To prevail on a facial challenge, Plaintiff must demonstrate that the policy "either could never be applied in a valid manner or, 'even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties.'" *Faustin v. City and Cnty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). Importantly, "[t]he overbreadth doctrine does not apply where there is no significant

difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the plaintiff's own activities." *Id.*

Here, Plaintiff does not allege that the policy inhibits the expressive activity of third parties not before the Court and instead simply contends that it inhibits his own speech. [Doc. # 1, ¶¶ 93-95]. This is insufficient to state a claim alleging that the policy violates the first amendment on its face, and Plaintiff's facial first amendment claim should be dismissed.

II.  **Plaintiff Does Not State a Due Process Claim Under the Void-for-Vagueness Doctrine**

Plaintiff's second claim contends that the policy violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague on its face. [Doc. #1, ¶¶ 101-03]. The void-for-vagueness doctrine requires a penal statute to define the criminal offense with sufficient definiteness that ordinary people can understand which conduct is prohibited and that does not encourage arbitrary and discriminatory enforcement. *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009). Facial challenges are appropriate when a law threatens to chill constitutionally protected conduct, particularly first amendment protected conduct, or when a plaintiff seeks pre-enforcement review of the law because it is incapable of valid application. *Id.* at 1180.

As an initial matter, the void-for-vagueness doctrine is inapplicable in this circumstance. The doctrine is ordinarily applied to criminal laws, *see, e.g.*, *Beckles v. United States*, 137 S. Ct. 886, 892 (2017), and has been applied in other contexts only when a law deprives individuals of a liberty or property interest, *see Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) (applying the

doctrine to law requiring the removal of an alien). The policy here neither imposes a criminal penalty nor otherwise imposes a deprivation of liberty or property.

Furthermore, even if the doctrine applies to the policy, it provides sufficient definiteness to inform individuals of the conduct prohibited and the locations in which it is prohibited. [*See* Exhibit A; *see also* Map, attached as **Exhibit B**]. The map also clearly outlines the specific areas in which expressive activity is allowed. [Exhibit B]. As a result, even if the void-for-vagueness doctrine applies to the policy, which it does not, the policy is sufficiently definite that it cannot be declared unconstitutional under the doctrine.

### III.   Lt. Leger Is Entitled to Qualified Immunity from Plaintiff's Claims

Plaintiff's claims against Lt. Leger in his individual capacity must be dismissed on the additional ground that Lt. Leger is entitled to qualified immunity. The doctrine of qualified immunity shields an individual defendant from liability unless the conduct he is accused of violated a "clearly established" constitutional right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). An individual defendant's assertion of qualified immunity shifts the burden to the plaintiff to show: (1) the alleged facts establish a violation of the plaintiff's constitutional right and (2) the constitutional right was "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A constitutional right is clearly established when " 'the contours of [the] right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has repeatedly cautioned against defining clearly established law at a high level of generality, and whether the unlawful nature of particular conduct

is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Mullenix*, 577 U.S. at 12.

The only actions that Lt. Leger is alleged to have taken are to inform Plaintiff of the policy and to warn him that he would be cited with trespass if he did not cease his expressive activity at his current location. [Doc. # 1, ¶¶ 47-71]. As stated above, the policy does not violate the Constitution. By merely informing Plaintiff of the policy and stating that he would enforce it, Lt. Leger did not violate the Constitution. In addition, Plaintiff is unable to meet his burden of identifying law clearly establishing that Lt. Leger's actions were unlawful, as there is no known Supreme Court or Tenth Circuit case finding similar conduct to violate either the first amendment or fourteenth amendment's Due Process Clause. On the contrary, the case on point is *Hawkins*, which found a strikingly similar policy as the one at issue here to be constitutional. As a result, a reasonable officer would believe that the policy was constitutional and its enforcement would not violate the Constitution. For such reasons, Plaintiff cannot prevail on a claim against Lt. Leger in his individual capacity.

## CONCLUSION

Plaintiff's Complaint fails to allege that he was deprived of the first amendment's free speech or the fourteenth amendment's due process protections. As a result, Plaintiff cannot prevail on his § 1983 claims against Denver or Lt. Leger. In addition, Plaintiff fails to allege that Lt. Leger's conduct violated clearly established law. As a result, Plaintiff's Complaint should be dismissed in its entirety.


DATED this 8th day of December, 2020.

Respectfully submitted,

By: *s/ Melanie B. Lewis*
Melanie B. Lewis, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, Colorado 80202.
Telephone: (720) 913-3240
Facsimile: (720) 913-3190
E-mail: melanie.lewis@denvergov.org
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December 2020, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT** was filed with the Clerk of the Court via the CM/ECF system, and which will send notification of such filing to the following:

Nathan W. Kellum
nkellum@crelaw.org

*s/ Philip Jett*
Philip Jett
Office of the Denver City Attorney