IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-03098-RBJ

JOSEPH MALDONADO,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
EDWARD LEGER, Individually and as Police Lieutenant with City and County of Denver
Police Department,

      Defendants.

---

## ORDER ON DEFENDANTS' MOTION TO DISMISS

---

Plaintiff Joseph Maldonado sues the City and County of Denver for restricting his speech at Red Rocks, allegedly in violation of his First Amendment rights.  Before the Court is defendants' motion to dismiss.  ECF No. 21.  For the following reasons the motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

Mr. Maldonado is a Colorado resident.  ECF No. 1 at ¶ 7.  Defendant City and County of Denver ("Denver") owns and manages Red Rocks Mountain Park ("Red Rocks") through the Denver Parks and Recreation Department, and it manages and regulates the Red Rocks Amphitheatre through its Arts and Venues Division.  *Id.* at ¶ 8.  Defendant Edward Leger ("Lt. Leger") is a police lieutenant with the Denver police department.  *Id.* at ¶ 9.

Red Rocks is a park in Morrison, Colorado that covers approximately 868 acres of

property.  Except for the amphitheater during ticketed events, the entire complex is free to enter

and open daily from one hour before sunrise to one hour after sunset.  It attracts thousands of

visitors each year.  *Id.* at ¶¶ 21–22, 25.  It contains rock formations, the geologically-formed

open air amphitheater, streets and sidewalks, and trails for hiking and biking.  It also contains the

Colorado Music Hall of Fame, a visitor center, a trading post, a restaurant, seasonal art exhibits,

a picnic shelter, and several parking lots.  *Id.* at ¶ 24.  The amphitheater serves as a venue for

concerts, weddings, graduation ceremonies, movie screenings, and other events.  *Id.* at ¶ 26.

Denver's Arts and Venues Division[1] maintains a policy regarding free speech activity in

its venues.  This includes Red Rocks.  The document is titled "Policy Statement: No Public

Forum Activities Permitted at Public Assembly Facilities."  It reads in relevant part,

> The City and County of Denver, through its Division of Theatres and Arenas, owns and
> operates a portfolio of public assembly facilities.  The Theatres and Arenas Division,
> directly or indirectly, leases spaces within its public assembly facilities to tenants
> pursuant to license agreements.  Such license agreements grant to the City's tenants
> certain rights to use and control the leased premises during specific dates and times
> subject to the terms and conditions of the lease, rules and regulations promulgated by the
> Theatres and Arenas Division and all applicable laws.
>
> The City's public assembly facilities, including without limitation any associated parking
> lots, parking garages and outdoor assembly areas adjacent to the facilities, are reserved
> for the exclusive use of tenants and their invitees, and therefore the City's public
> assembly facilities are not public forums for expressive activities by members of the
> general public.
>
> This Policy Statement applies to the following City-owned public assembly facilities:
> . . .
> - Red Rocks Amphitheatre and Visitor Center, located in Red Rocks Park, a Denver
>   mountain park in Jefferson County.
> . . .
> The City and County of Denver recognizes and respects the need for areas for public
> expression adjacent to its public assembly facilities and therefore it has designated certain

---

[1] The Arts and Venues Division was formerly called the Theatres and Arenas Division.  ECF No. 1 at ¶ 27.  The
policy in place at the time of these events apparently still referred to the old name.

> areas adjacent to its public assembly facilities as public forums or identified traditional public forums such as sidewalks in the right of way for expressive activities. The Theatres and Arenas Division has maps available for each of its public assembly facilities showing the related public forum areas. . . .

ECF No. 21-1 at 1–2. The policy then says, "[a]ny expressive activity (demonstrations, picketing, leafleting, etc.) in the public frum areas adjacent to the City's public assembly areas must comply with all City ordinances and other rules and regulations, including state and federal laws, governing such activity." *Id.* at 2. It also lists additional rules from the Division itself. *Id.*

In essence, the policy declares that the Red Rocks Amphitheatre and Visitor Center, nearby parking lots and garages, and "outdoor assembly areas adjacent to the facilities," are areas where free speech activities are not permitted. But it goes further. With respect to the entire complex of 868 acres—not just the amphitheater and visitor center—Denver has designated five discrete "public forum areas" where expressive activities are permitted. A map provided by Denver marks those five areas. *See* ECF No. 21-2. According to plaintiff, none of the five areas encounters much pedestrian traffic. Instead, the areas are all places near intersecting public streets. ECF No. 1 at ¶¶ 34–36.

Mr. Maldonado is a Christian who feels compelled by his faith to share the gospel of Jesus Christ with others. He does so by handing out literature, holding up signs, preaching, and engaging interested individuals in one-on-one or small group conversations. He does so alone or with one or two friends. Mr. Maldonado seeks to share the gospel in public places where there are steady streams of people and where he can access the general public, such as parks and public sidewalks. *Id.* at ¶¶ 10–18. Red Rocks is one such place. *Id.* at ¶ 37. Mr. Maldonado wants to share his message in areas of Red Rocks where he can reach significant numbers of people. Two of these areas are the sidewalks bordering the Upper North lot and the Top Circle

lot, which receive a lot of pedestrian traffic due to their proximity to site-seeing areas and hiking trails, their altitude (and hence good views), and their popularity for parking during amphitheater events. *Id.* at ¶¶ 37–41. Prior to the events of this lawsuit, Mr. Maldonado had engaged in his religious speech multiple times in these locations without incident. On his first visit to Red Rocks to share his message, Denver police informed him of a law prohibiting amplification but said that other forms of speech were lawful. *Id.* at ¶¶ 42–43.

On April 18, 2019 around 5:00 pm Mr. Maldonado went to Red Rocks with two friends, Adam Lacroix and Kerrigan Skelly, to preach prior to a Snoop Dog concert at the amphitheater that evening. They went to the sidewalk near the Top Circle lot. They were well outside the barricades separating the amphitheater from the park, and they were out of the way of pedestrian traffic flow. *Id.* at ¶¶ 44–46. Before Mr. Maldonado and his friends began sharing their message, Lt. Leger and Red Rocks staff approached and told them that they needed to leave the area. Lt. Leger said that Denver had established specific public forum areas, and that Mr. Maldonado was not in one of those areas. Staff member Mr. Jeurgens gave Mr. Maldonado a copy of the map with the five discrete free speech areas in Red Rocks. Lt. Leger stressed that plaintiff and his friends could speak only in those five spots. Mr. Jeurgens also emailed them a copy of the new policy. *Id.* at ¶¶ 47–49, 51, 57.

Mr. Maldonado objected to having to move. He told Lt. Leger that Red Rocks is a public park, which the officer acknowledged. *Id.* at ¶¶ 54–55. Mr. Maldonado and Mr. Skelly both suggested that the policy was contrary to the U.S. Constitution. *Id.* at ¶¶ 55, 69. Lt. Leger stated that the Denver City Attorney's office had written the policy, and that they could take up any issues with that office or in court. He then stated that if the group refused to move to a

designated free speech area, he would pursue a trespass charge against them.  *Id.* at ¶¶ 59, 61–71.

Mr. Maldonado and his friends ultimately left Red Rocks entirely because they did not want to

receive a ticket or face other criminal sanction, but they also knew that speaking in any of the

five free speech areas would be futile due to the lack of traffic.  *Id.* at ¶¶ 72–73.

Later in 2019 Mr. Maldonado tried to resolve his concerns through administrative

channels.  He and his wife contacted the City Attorney's office to ask "whether the policy was

official law and how Denver could maintain a policy that contradicted First Amendment

protections."  *Id.* at ¶¶ 75–79.  On September 17, 2019 Tad Bowman, Venue Director for Red

Rocks Amphitheatre, emailed back saying the policy was constitutional.  *Id.* at ¶ 81.  Mr.

Maldonado subsequently retained legal counsel.  On June 1, 2020 his counsel sent a letter to

Denver's mayor, chief of police, and city attorney seeking assurance that Denver would refrain

from enforcing the policy to ban plaintiff's speech in "traditional public forums" of Red Rocks

park.  *Id.* at ¶¶ 84–87.  On July 7, 2020 a Senior Assistant City Attorney responded, saying that

no portion of Red Rocks is a traditional public forum, and that Mr. Maldonado's First

Amendment activities were appropriate only in the five designated spots.  *Id.* at ¶¶ 89–90; *see

also* ECF No. 22-1 [letter from City Attorney's office].

Mr. Maldonado has not returned to Red Rocks to attempt to share his message since April

2019 due to his fear of arrest and criminal sanctions.  He nonetheless "retains a strong desire to

return to the public sidewalks in Red Rocks park and share his religious message, particularly on

days when events are occurring in the Red Rocks amphitheater."  *Id.* at ¶¶ 91, 94.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this case on October 15, 2020.  ECF No. 1.  He brings a free speech claim

under the First Amendment—both as a facial challenge and as-applied—and a void for

vagueness/due process claim under the Fourteenth Amendment.  *Id.* at ¶¶ 97–103.  Defendants

moved to dismiss the entire case on December 8, 2020.  ECF No. 21.

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts

to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  While the Court must accept the well-pled allegations of the complaint as true and

construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210

(10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*, 556 U.S. at

681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*,

*Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  The court

may consider evidence beyond the complaint without converting a motion to dismiss to one for

summary judgment if the documents are central to the claims, referred to in the complaint, and if

the parties do not dispute their authenticity.  *Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*,

311 F.3d 1031, 1035 (10th Cir. 2002).

## IV. ANALYSIS

Defendants seek to dismiss each of Mr. Maldonado's claims on 12(b)(6) grounds.  In

addition, Lt. Leger argues that he is entitled to qualified immunity.  ECF No. 21.  I analyze each

claim in turn, and then I address whether Lt. Leger is qualifiedly immune.

A. <u>**Free speech claim**</u>

Plaintiff brings both facial and as-applied challenges to Denver's policy regarding expressive activity at Red Rocks.  While a facial challenge "is a head-on attack on a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications," an as-applied challenge "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *United States v. Supreme Ct. of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016) (alterations, internal quotation marks, and citations omitted).  I address the as-applied challenge first.

In order to establish a violation of his First Amendment rights, Mr. Maldonado must first show that his speech is protected by the First Amendment.  *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  "If so, a court must identify whether the challenged restrictions impact a public or nonpublic forum, because that determination dictates the extent to which the government can restrict First Amendment activities within the forum." *Verlo v. Martinez (Verlo I)*, 820 F.3d 1113, 1128 (10th Cir. 2016).  Finally, a court must determine whether the restriction on speech satisfies the requisite standard of review given the forum type. *Cornelius*, 473 U.S. at 797.

Government-owned property falls into three different categories with regard to exercise of free speech: traditional public fora, designated public fora, and nonpublic fora.  *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45–46 (1983).  "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Id.* at 45.  In such traditional public fora,

> For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. . . . The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Id.* at 45.  The same standards apply to designated public fora.  *Id.* at 45–46.  On the other hand, "[p]ublic property which is not by tradition or designation a forum for public communication is governed by different standards."  *Id.* at 46.  Access to such a nonpublic forum may be restricted by government regulation as long as it "is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  *Id.*

The parties do not dispute that plaintiff's religious preaching is protected speech.  ECF No. 20 at 5.  It undoubtedly is.  *See, e.g.*, *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("Our precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression.").  I therefore turn directly to whether Red Rocks is a public forum.

### 1.  Forum analysis

Prior to engaging in so-called "forum analysis," I first clarify the scope of the forum at issue.  *See Cornelius*, 473 U.S. at 800.  Denver argues that plaintiff's claim is limited to the walkways adjacent to the Upper North lot and Top Circle lot leading to the Amphitheater.  ECF No. 25 at 4.  But in fact, the complaint asks the Court to "declar[e] Denver's public forum policy in Red Rocks park and practice of banning expression taking place on *public sidewalks and other public areas in Red Rocks park* is unconstitutional . . . ."  ECF No. 1 at 17 (emphasis added).  Mr. Maldonado thus seeks the right to preach not just on sidewalks near the two lots, but in all open and accessible areas of Red Rocks besides the amphitheater and its immediate vicinity.

ECF No. 22 at 3.  Further, Lt. Leger did not merely prevent Mr. Maldonado from preaching on the sidewalks bordering the parking lots—he prevented him from preaching in all areas of the park outside of the discrete public forum areas.  *Id.* at ¶ 1.  The forum here thus concerns all publicly accessible areas of Red Rocks excepting the amphitheater and its immediate vicinity. *See Cornelius*, 473 U.S. at 801 ("When speakers seek general access to public property, the forum encompasses that property.").

I now arrive at the most important question in this case: what type of forum is Red Rocks?  From the forum type, all else flows.  While Mr. Maldonado asserts that the public areas of Red Rocks are a traditional public forum, Denver contends that the subject area is not a public forum at all.  The law is abundantly clear that public parks are traditional public fora.  "'[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *United States v. Grace*, 461 U.S. 171, 177 (1983).  *See also Cornelius*, 473 U.S. at 802 (noting public streets and parks fall into the traditional public fora category); *Eagon Through Eagon v. City of Elk City, Okl.*, 72 F.3d 1480, 1486 (10th Cir. 1996) (city parks are "quintessential" public fora).  The government cannot "declare the First Amendment status of property regardless of its nature and public use." *First Unitarian Church of Salt Lake Cty. v. Salt Lake Cty. Corp.*, 308 F.3d 1114, 1124 (10th Cir. 2002).  Traditional public fora are open to expressive activity regardless of government intent. *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 678 (1998).

Here, Mr. Maldonado sufficiently alleges that Red Rocks is a traditional public forum because it is a public park.  A park is defined as "[a] large open area usually with grass and trees, especially in a city or town, for public recreation . . . ." *Park*, Black's Law Dictionary (11th ed.

2019).  Red Rocks fits this definition.  It consists of open spaces with rock formations and a series of interconnected streets and sidewalks.  ECF No. 1 at ¶ 23.  Beyond the amphitheater, the park is free and accessible to the public year-round from before sunrise to after sunset, and even the amphitheater is typically open to all visitors when ticketed events are not taking place.  *Id.* at ¶ 22.  Thousands of people enter Red Rocks each year to engage in public recreation activities such as hiking, biking, yoga, picnicking, in addition to attending events.  *Id.* at ¶ 25.  In fact, Denver's own policy at issue here describes Red Rocks as "a Denver mountain *park* in Jefferson County."  ECF No. 21-1 at 1 (emphasis added).

Denver makes two arguments to counter Mr. Maldonado's position that the subject area is a public forum.  First, Denver argues that a case called *Hawkins* is dispositive of the forum question and dictates that Red Rocks is nonpublic.  In *Hawkins* the Tenth Circuit held that the Galleria, a glass-covered pedestrian walkway leading to the Denver Performing Arts Complex ("DPAC"), was not a public forum because its function was "simply to permit ingress to and egress from the DPAC's various complexes."  *Hawkins v. City & Cty. of Denver*, 170 F.3d 1281, 1287 (10th Cir. 1999).  Although the Galleria had once been a public street, it was rendered no longer a traditional public forum when the government substantially changed its physical nature—it was thus not a park, a public right of way, or a thoroughfare.  *Id.*  Denver argues that the sidewalks bordering the Top Circle and Upper North lots are analogous to the walkway in *Hawkins* in that they serve as the primary access point for the amphitheater, particularly during events held there.  ECF No. 21 at 7.

I disagree that *Hawkins* is dispositive.  While the sidewalks to which defendant refers do provide access to amphitheater events, that is by no means all they do.  They are traversed by

pedestrians accessing other parts of Red Rocks, such as hiking and sight-seeing trails, the picnic shelter, and high-altitude areas boasting some of the best views in the park.  Unlike the Galleria, they are not enclosed, and the complaint contains no allegations that Denver has substantially altered their physical nature over time.  These sidewalks are thus much more akin to streets and sidewalks considered traditional public fora than the walkway in *Hawkins*.

Furthermore, the sidewalks are not the only areas at issue here.  Denver prevented Mr. Maldonado from preaching not just on the sidewalks bordering these two parking lots, but in all publicly-accessible areas of Red Rocks park beyond the five discrete free speech areas.  The map denoting those five public forum areas suggests that the policy applies to locations almost everywhere beyond the amphitheater and visitors center, including large swaths of road and open areas of Red Rocks.  ECF No. 21.  *Hawkins* itself reiterates that areas such as these qualify as traditional public fora.  *Hawkins*, 170 F.3d at 1287.  Defendant's reliance on *Hawkins* thus also misses the mark by assuming an improperly narrow view of the forum's scope.

In a similar vein Denver relies on the Supreme Court's *Kokinda* decision to argue that the sidewalks in question are not really sidewalks à la traditional public fora.  In *Kokinda* the Court ruled that a sidewalk connecting a post office to its parking lot was not a public forum because its sole purpose was to facilitate entry to the facility, not "to facilitate the daily commerce and life" of the community.  *United States v. Kokinda*, 497 U.S. 720, 728 (1990).  Denver argues again that the sidewalks in Red Rocks serve purely as ingress and egress points to the amphitheater instead of "being continually open, uncongested and facilitating neighborhood life or local commerce."  ECF No. 21 at 8.  Denver's reliance on *Kokinda* fails for the same reasons as its reliance on *Hawkins*—the sidewalks at issue here serve a broader set of purposes than the

Galleria or post office walkway, and the scope of the forum goes beyond the sidewalks.

Denver's second argument is that the area in question is not a traditional forum merely because it is in a place called a "park." Denver writes that plaintiff "alleges no facts establishing that Denver intended to hold the area open for public discourse or that it has been used historically for the purpose of assembly, communicating thoughts between citizens, or discussing public questions." ECF No. 21 at 9. It cites to the D.C. Circuit case *Boardley* to argue that not all parks are public fora, and that plaintiff must show that Red Rocks has been used for purposes of assembly or communicating thoughts between citizens. *Boardley v. U.S. Dept. of Int.*, 615 F.3d 508 (D.C. Cir. 2010). The *Boardley* court wrote,

> The protections of the First Amendment do not rise or fall depending on the characterization ascribed to a forum by the government. Mount Rushmore does not become a public forum merely by being called a "national park" any more than it would be transformed into a nonpublic forum if it were labeled a "museum." The dispositive question is not what the forum is *called,* but what *purpose* it serves, either by tradition or specific designation. What makes a park a traditional public forum is not its grass and trees, but the fact that it has "immemorially been held in trust for the use of the public and, time out of mind, ha[s] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."

*Id.* at 514–15 (quoting *Perry*, 460 U.S. at 45). It declined to decide whether all 391 national parks were public fora because it lacked a sufficient evidentiary record. *Id.* at 515.

Denver reads *Boardley* to mean that plaintiff must not just allege Red Rocks is a park, but that he must allege facts demonstrating it has traditionally been used for the purpose of assembly, communication of thoughts, or discussion of public questions. *Boardley* does not require such detailed allegations about a park's traditional use, however. Rather, the court in *Boardley* merely emphasized that parks are public fora not because of their natural elements, but because of the time-honored tradition of parks being, by definition, places where free speech activities are

permitted.  If something is recognizable as a public park, the fact that it has traditionally been

held in the public trust and open to free speech is presumed.  Parks are public fora as a matter of

law.  *See Verlo I*, 820 F.3d at 1145.  Once a plaintiff has established that the subject forum is a

park, the inquiry need go no further.

In a superb decision issued by Judge William Martinez, this district foreclosed the

argument that extensive factual allegations or evidence are required to find a traditional public

forum.  *Verlo v. Martinez (Verlo II)*, 262 F. Supp. 3d 1113, 1134 (D. Colo. 2017).  After an

extensive review of public forum jurisprudence Judge Martinez concluded, "Supreme Court and

Tenth Circuit case law have consistently shown that applying or stripping the 'traditional public

forum' label from a particular public space requires very little fact-finding because traditional

public fora comprise an essentially fixed set of historically determined categories: public streets,

public sidewalks, and public parks."  *Id.* at 1134–36.  He went on, "[t]he vast weight of Supreme

Court and Tenth Circuit authority approaches the traditional public forum question simply by

asking whether the public space in question fits within" one of those categories.  *Id.* at 1145.[2]

I follow this approach here.  Because plaintiff has alleged facts indicating that Red Rocks

is a park, he has met his burden under Rule 12(b)(6) and sufficiently alleged that the forum in

question is a traditional public forum.  If Denver would like to introduce evidence establishing

---

[2] Judge Martinez noted that no case besides *First Unitarian* suggested that the inquiry "must go deeper."  *Verlo II*, 262 F. Supp. 3d at 1146.  He stated that "inquiries into history, compatibility with expression, and other 'objective characteristics' . . . are relevant to whether the government had *designated* a public forum, not whether a particular space is a traditional public forum."  *Id.*  The Tenth Circuit's decision in *First Unitarian* concerned a public easement on a sidewalk owned by a private party.  *First Unitarian*, 308 F.3d at 1117–19.  Judge Martinez' review of Tenth Circuit and Supreme Court cases revealed that *First Unitarian* was an outlier in its detailed analysis of a traditional public forum based on "objective factors" from Justice Kennedy's opinion in *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 698–99 (Kennedy, J., concurring).  *Verlo II* thus rejected this detailed analysis for determining a traditional public forum.

that Red Rocks is not a park, it may do so at a later stage of litigation.  Further analysis of

whether Red Rocks is a public forum, particularly whether it is a designated public forum, is an

"inherently factual inquiry" inappropriate on a motion to dismiss.  *Verlo I*, 820 F.3d at 1144.

### 2.  Appropriateness of the restriction

I now turn to whether Denver's restrictions on Mr. Maldonado's speech satisfy the

relevant standard of review.  Because plaintiff has sufficiently alleged that Red Rocks is a public

forum, Denver's rights to limit free speech are "sharply circumscribed."  *Perry*, 460 U.S. at 45.

Regulations on speech may be content-based or content-neutral.  In traditional public fora,

content-based speech restrictions are valid only if (1) "necessary to serve a compelling state

interest," and (2) "narrowly drawn to achieve that end."  *Eagon*, 72 F.3d at 1487 (quoting *Perry*,

460 U.S. at 45–46).  Content-neutral regulations, or "time, place, and manner" restrictions, are

valid if they are (1) "narrowly tailored to serve a significant government interest," and (2) "leave

open ample alternative channels of communication."  *Id.* (quoting *Perry*, 460 U.S. at 45–46).

I conclude that the policy at issue here is content-neutral.  Neither the policy statement

nor the map appears to target any particular type of speech, such as religious expression.

Instead, the policy refers simply to "expressive activities."  ECF No. 21-1 at 1.  Nor does either

party claim it is content-based.  *See generally* ECF Nos. 21, 22, 23.  Thus, plaintiff will have

alleged a free speech claim if there are sufficient facts suggesting the policy is not narrowly

tailored or fails to leave open ample alternative channels of communication.

Based on plaintiff's allegations alone, Denver's policy is not narrowly tailored.  "For a

content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden

substantially more speech than is necessary to further the government's legitimate interests."

14

*McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotation marks and citation omitted).  The government's stated interest is in "preserving the Amphitheatre for the use for which it was lawfully intended, namely an arts venue . . . ."  ECF No. 21 at 10.  Denver says that "by restricting expressive activity to designated free speech zones, the policy protects against such activity interfering with the events in the open-air Amphitheatre, disrupting the entertainment experience of patrons, impeding the delivery of supplies or medical services, and obstructing congested channels of vehicle and pedestrian traffic."  *Id.*

The policy burdens substantially more speech than is necessary to achieve this interest.  It does not restrict speech just in the immediate vicinity of the amphitheater, but according to the map also in the entire rest of the 868 park acres besides the designated free speech areas.  This includes areas over a mile away from the amphitheater, where expressive activity could not even be seen or heard by event attendees, much less interfere with events or services.  Furthermore, the policy bans "all expressive activity."  This formulation is staggeringly broad.  It appears not only to ban "demonstrations, picketing, and leafleting," as the policy lists out at one point, but virtually any type of speech—whether that is political conversations between individuals, chants during a group yoga session, or clothes bearing a message.  Most of that speech is unlikely to be disruptive in the ways the policy hypothesizes.  The policy also fails to cabin its restrictions to times when the amphitheater is used as an arts venue.  Expressive activity is banned at *all* times, even when the government's so-called interest is impossible to achieve because the amphitheater is not hosting an event.  Finally, the policy is not even narrowly tailored to validly restrict plaintiff's own speech.  Per the complaint's allegations, which I take as true at this stage, Mr. Maldonado shared his religious messages well outside the barricades separating the amphitheater

from the rest of the park, and he did not interfere with pedestrian traffic.  ECF No. 1 at ¶ 46.  His speech was nonetheless prohibited.

In addition to not being narrowly tailored, plaintiff has also alleged that the policy fails to provide ample alternative channels of communication.  The map designates five areas of the park for expressive activity.  But as plaintiff points out, none of these is near pedestrian activity.  Each is located at a street intersection crossed mostly by cars, nowhere near the amphitheater, visitor center, or other park locations with substantial foot traffic.  The purpose of plaintiff's speech—to reach others with his religious messages—is thus almost entirely thwarted by his being relegated to these out-of-the-way free speech zones.

In sum, plaintiff's complaint contains sufficient facts to allege that Denver's policy is an invalid content-neutral regulation.  His as-applied challenge to the policy may thus proceed.

3.  <u>Facial overbreadth</u>

As mentioned above, plaintiff also challenges Denver's policy on its face.  "Facial challenges to statutes are sometimes permissible, especially where speech protected by the First Amendment is at stake."  *Faustin v. City, Cty. of Denver, Colorado*, 268 F.3d 942, 948 (10th Cir. 2001) (citing *N.Y. State Club Assoc. v. City of N.Y.*, 487 U.S. 1, 11 (1988)).  To succeed on a facial attack, a plaintiff must show that the challenged law "could never be applied in a valid manner or, 'even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties.'"  *Id.* (quoting *N.Y. State Club*, 487 U.S. at 11).

Denver claims that plaintiff's facial overbreadth challenge fails because plaintiff does not allege its policy inhibits expressive activity of third parties.  I disagree.  Mr. Maldonado asserts

16

in his complaint that Denver's policy and its enforcement "chill the free speech of Maldonado and third-party citizens."  ECF No. 1 at ¶ 98d.  He also alleges that that policy is overbroad and "unconstitutional on its face."  *Id.* at ¶ 98a; *id.* at 17.

Plaintiff has sufficiently alleged an overbreadth challenge to Denver's policy.  The complete ban on "expressive activity" anywhere in Red Rocks besides the five discrete public forum areas is similar to the policy the Supreme Court struck down in *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987).  There, the Los Angeles airport adopted a resolution banning all "First Amendment activities" within the "Central Terminal Area" at Los Angeles International Airport.  *Id.* at 570–71.  The Court concluded that "[t]he resolution's facial overbreadth is substantial since it prohibits all protected expression and does not merely regulate expressive activity that might create problems such as congestion or the disruption of airport users' activities."  *Id.* at 569.  Similarly, Denver's policy at Red Rocks bans all protected speech in almost the entire park, despite its stated interest in merely preventing congestion or interference with park events or services.

It is true that "[f]acial challenges are strong medicine."  *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005).  Nonetheless, on the facts alleged I see no limiting construction of the policy that would render it valid.  Like in *Jews for Jesus*, "[u]nder such a sweeping ban, virtually every individual who enters [Red Rocks] may be found to violate the resolution by engaging in some" First Amendment or expressive activity.  *Jews for Jesus*, 482 U.S. at 575.  At a minimum, plaintiff has alleged that Denver's policy is so broad that it inhibits constitutionally protected speech of third parties.  Plaintiff's facial challenge thus also survives the motion to dismiss.

B.  **Due process claim**

Mr. Maldonado's second claim is for a violation of due process.  He argues that Denver's policy is void for vagueness.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Restriction on speech may not leave "uncertainty among speakers" about "just what they mean."  *Reno v. Am. C.L. Union*, 521 U.S. 844, 871 (1997).  A court may find a statute impermissibly vague for either of two separate reasons: "[f]irst, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Defendants argue that the vagueness doctrine is inapplicable because Denver's policy is not a criminal law.  But courts have applied the vagueness test to statutes and policies that do not expressly impose criminal penalties.  *E.g.*, *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 50– 51 (10th Cir. 2013) (holding policy that required students to obtain approval to distribute non- school-sponsored material on school grounds was not unconstitutionally vague).  *See also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982) (distinguishing vagueness challenges among laws carrying civil and criminal penalties, and economic regulation versus laws inhibiting the exercise of constitutionally protected rights).  Furthermore, plaintiff has alleged that he faced criminal penalties based on his running afoul of Denver's policy.  Leger threatened him and his friends with trespassing, a criminal charge, if they did not comply.  ECF No. 1 at 64.  This is enough for a vagueness challenge to apply.

Mr. Maldonado has sufficiently alleged that Denver's policy fails to communicate what conduct it prohibits.  First, it is unclear to what protected speech the policy applies.  It explicitly mentions "expressive activities by members of the general public" and "[a]ny expressive activity."  ECF No. 21-1 at 1–2.  One could read the latter phrase as limited by the parenthetical that follows, which says "demonstrations, picketing, leafleting, etc."  *Id.*  The "etc." reveals the ambiguity, however—even if the policy attempted to ban only activities similar to demonstrations, picketing, and leafleting, it is not clear what speech would fall in that category.

The policy's enforcement against plaintiff further shows how it fails to communicate what conduct it prohibits.  Other individuals at Red Rocks on April 18, 2019 were presumably engaging in expressive activities such as talking on cell phones, holding individual conversations, and wearing expressive clothing.  Yet as far as the complaint alleges, only Mr. Maldonado and his friends were told that their speech was prohibited.  Nothing in the policy suggests why it was enforced against them but not others.  This also reveals that the policy's broad language, encompassing virtually all protected speech, authorizes discriminatory enforcement.  Assuming plaintiff's allegations are borne out in the evidence, such discriminatory enforcement has already occurred in Denver's application of the policy to Mr. Maldonado.

Second, Mr. Maldonado has alleged that the policy is vague as to where it applies.  The policy defines the "public assembly facility" in which expressive activities by the public are not allowed as the Red Rocks Amphitheater, the Visitor Center, and "any associated parking lots, parking garages and outdoor assembly areas adjacent to the facilities."  ECF No. 21-1 at 1.  This is but a small part of Red Rocks' 868 acres, but even this scope is unclear—what constitutes an "outdoor assembly area," and how close or far from the amphitheater or visitor center is

"adjacent?"  The scope of where free speech is permitted is further complicated by the policy's reference to the map.  As discussed at length in this Order, the accompanying map appears to ban expressive activity not just in and around the amphitheater and visitor center, but anywhere outside the five small discrete zones.  An individual seeking to engage in free speech activity would be appropriately confused as to how the policy applies in areas that are outside the five zones but also away from the "public assembly facility" near the amphitheater and visitor center.

The Court cannot say whether the policy is "surely valid in the vast majority of its intended applications" *Hill*, 530 U.S. at 733, because it is unclear from the policy what those intended applications would even be.  A more developed evidentiary record and further briefing on the issue are required.  At this stage, however, plaintiff has put forth enough factual allegations for his due process claim to proceed.

### C.  <u>Qualified immunity</u>

The last question I address is whether Lt. Leger is entitled to qualified immunity.  To avoid application of qualified immunity, a plaintiff must (1) allege facts that make out a violation of a constitutional right, and (2) show that the constitutional right was clearly established at the time it was allegedly violated.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  A reviewing court has discretion to address either prong first.  *Id.* at 236.  I have already concluded that plaintiff has sufficiently alleged a constitutional violation under prong one.

Under prong two defendants argue that plaintiff has not identified law clearly establishing that Lt. Leger's actions were unlawful.  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

(2012)). "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks and citation omitted).

Here I agree with defendants. While it is clearly established that banning all expressive activity in a traditional public forum is unconstitutional, *Perry*, 460 U.S. at 45, it was not necessarily clear that the areas of Red Rocks in which plaintiff seeks to speak are a traditional public forum. Plaintiff has sufficiently alleged that Red Rocks is a public forum for purposes of the motion to dismiss. That is not the same as my holding that it is a public forum as a matter of law, or that its forum status was so clear that any reasonable officer would have known it. The facts of this case are close neither to *Hawkins*, which defendants claim control, or *Verlo I*, which plaintiff insists makes the law clear. In fact, neither party has cited authorities addressing forum analysis in a context similar to Red Rocks that resolves the issue. One of the most analogous cases is *Eagon*, in which the Tenth Circuit addressed whether a public park was a traditional public forum during a Christmas event. But even there the court noted, as I note here, "[t]he existence of divergent views as to the nature of the forum." *Eagon*, 72 F.3d at 1490. For that reason it granted qualified immunity to the city councilmen defendants. *Id.*

Also important is that Lt. Leger was enforcing a policy against plaintiff under the direction of the Denver City Attorney. The Tenth Circuit has held that

> A law enforcement officer's reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question may absolve the officer from knowing that his conduct was unlawful, except when the statute or ordinance is so patently violative of fundamental constitutional principles, that a reasonable officer could not believe it was permissible to enforce it.

21

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (alterations, internal

quotation marks, and citations omitted).  In *Christensen* the court affirmed qualified immunity

for officer-defendants who enforced a city ordinance against a plaintiff who sold his artwork in

public without a license.  *Id.* at 1273–74, 1278.  It opined that "[p]olice officers are not

constitutional lawyers, and they should not have to fear personal damages liability when they

enforce the plain terms of an ordinance that has not been challenged in court, let alone

overturned, unless its unconstitutionality is patent."  *Id.* at 1278.

Here too Lt. Leger was relying on an official policy that prohibited plaintiff's conduct.

Furthermore, the policy's content-neutrality and its provision of designated free speech zones—

however inadequate they may ultimately turn out to be—would have suggested to any reasonable

officer that the policy was not "patently violative" of the Constitution.  Nor has plaintiff alleged

that Denver's policy was challenged in court or overturned prior to now.  Finally, at least one

other judge from this district granted qualified immunity to city officials based on their reliance

on a law, policy, or other government-issued decree.  *See Kreck v. The City & Cty. of Denver*,

No. 10-CV-01474-LTB-MEH, 2011 WL 42613, at *2–3 (D. Colo. Jan. 6, 2011) (holding officers

were not entitled to dismissal on 12(b)(6) grounds but granting qualified immunity because they

relied on a Denver County Court order stating that they had not violated plaintiff's rights).  I

therefore conclude that Lt. Leger is entitled to qualified immunity.

## ORDER

Defendants' motion to dismiss [ECF No. 21] is granted in part and denied in part as follows:

1. The Court GRANTS the motion as to the claims against Lt. Leger in his individual

    capacity.  These claims are dismissed with prejudice.

2. The Court DENIES the motion as to both claims—violation of free speech under the First Amendment and violation of due process under the Fourteenth Amendment—against Lt. Leger in his official capacity and against the City and County of Denver.  These claims may proceed.

       DATED this 6th day of August, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge